SO ORDERED: June 1, 2012.



_____
**James K. Coachys
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| THREESTRANDS BY GRACE, LLC, | )   Case No. 12-00756-JKC-11 |
| | ) |
| Debtor. | ) |
| _____ | ) |

### ORDER GRANTING APPLICATION TO EMPLOY
### TAFT STETTINIUS & HOLLISTER LLP AS DEBTOR'S COUNSEL
### EFFECTIVE NUNC PRO TUNC TO JANUARY 31, 2012

This matter is before the Court on the "Application To Employ Taft Stettinius & Hollister LLP As Debtor's Counsel Effective *Nunc Pro Tunc* to January 31, 2012" (the "Application") filed by ThreeStrands by Grace, LLC, debtor and debtor-in-possession (the "Debtor"), by counsel and pursuant to 11 U.S.C. § 327 and Federal Rule of Bankruptcy Procedure 2014, and the Objection thereto (the "Objection") filed by the United States Trustee (the "Trustee"). In the Application, the Debtor seeks authority to employ Taft Stettinius & Hollister LLP (the "Firm") as counsel for the Debtor pursuant to a fixed or flat fee engagement, with such employment to be effective *nunc pro tunc* to the commencement of this case.

**Procedural and Factual Background**

The Debtor is an Indiana limited liability company that operates an approximately 20,000 square foot, faith-based fitness center on real estate and improvements that it owns in Indianapolis, Indiana. Prior to the Petition Date, the prepetition debtor executed an engagement letter and paid the Firm $70,000 as a flat fee and $1,046 as a chapter 11 filing fee, and the Firm agreed to represent the Debtor during the entirety of this chapter 11 case.

On January 31, 2012 (the "Petition Date"), the Debtor filed a voluntary chapter 11 petition and a number of first day motions, including a "First Day Motion for Authority to Use Cash Collateral for Operating Expenses and Granting Replacement Liens." No objections were filed to the cash collateral motion, and on March 14, 2012, the Court entered its "Final Order Authorizing Debtor to Use Cash Collateral for Operating Expenses and Granting Replacement Liens." Pursuant to that order, the Debtor is required to adequately protect secured creditors by maintaining the combined value of cash and net (collectible) receivables at or above $7,641 during the period of cash use, which is the cumulative value of those assets as of the Petition Date.

On March 13, 2012, the Debtor filed the Application. On April 2, 2012, the Trustee filed its Objection. The basis for the Objection is that the engagement of attorneys on a flat fee basis in bankruptcy could create an unintended superpriority claim and eliminate certain priorities set forth in the Bankruptcy Code. Specifically, the Trustee argues that fees awarded under 11 U.S.C. § 330 are allowed as an administrative expenses under 11 U.S.C. § 503(b)(2). These expenses, in turn, are awarded priority under 11 U.S.C. § 507(a)(2). In the event of administrative insolvency, attorneys may be required to share distributions pro rata with other similarly situated administrative creditors. The Trustee asserts that the engagement proposed by the Firm will alter this priority structure and

2

create a super priority claim for the Firm in the event of administrative insolvency. The Trustee acknowledges that flat fee engagements are permitted under both Indiana state law and the Bankruptcy Code, but by the Objection asks the Court to require the Firm to disgorge the entire flat fee in the event of administrative insolvency so that similarly situated administrative creditors can share pro rata in the assets of the estate.

The Court conducted an initial hearing on the Application and the Objection on April 24, 2012. After considering the arguments presented at that hearing, and given additional concerns the Court had with the Application and the implications of flat fee engagements, the Court scheduled a second hearing for May 17, 2012.

### Discussion and Decision

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Retention of professionals is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

Section 328(a) of the Bankruptcy Code provides that a debtor-in-possession may, with court approval, employ attorneys "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." In Indiana, the three most common "terms and conditions" under which attorneys are retained are: (1) advance fees; (2) general retainers; and (3) flat fees. *In re O'Farrell*, 942 N.E.2d 799, 803 (Ind. 2011). An advance fee (also referred to as a security retainer) is a payment made at the beginning of a representation to secure payment of fees for future services, often charged on an hourly basis. Because the client retains an interest in the funds, the attorney must segregate them from his own. *In re Stanton*, 504 N.E.2d 1, 2-3 (Ind. 1987); *In re Kendall*, 804 N.E.2d 1152, 1158 (Ind. 2004). A

general retainer is payment for an attorney's availability, whether or not services are ever provided. It "acts as an option on the lawyer's future services, often on a priority basis, and precludes the lawyer from undertaking representations that might conflict with representing the client." *O'Farrell*, 942 N.E.2d at 803. A general retainer "is earned in full when paid before any work is done." Id. Because the funds are no longer property of the client upon payment, an attorney is not required to segregate those funds, but may instead place them in a general operating account. Stanton, 504 N.E.2d at 3. Finally, a fixed fee (also referred to as a flat fee) is a fixed charge "that an attorney charges for all legal services in a particular matter, or for a particular discrete component of legal services." *Kendall*, 804 N.E.2d at 1157. Like general retainers, the funds are no longer property of the client upon payment and segregation is not required. *Id.* at 1160.

In this case, the Debtor is seeking authority to engage the Firm on what they refer to as a fixed fee engagement. Despite how a client and its attorney may characterize a representation, however, "it is the actual nature of the attorney-client relationship, not the label used, that will be determinative." *Id*.; *see also O'Farrell*, 942 N.E.2d at 803 ("Regardless of the term used to describe a client's initial payment, its type is determined by its purpose, i.e., what it is intended to purchase."). Accordingly, before approving the Application, it is necessary for the Court to inquire into the underlying agreement between the Debtor and the Firm.

Prior to the commencement of this case, the prepetition debtor paid the Firm $70,000 in exchange for the Firm's agreement to represent the Debtor throughout this chapter 11 case. According to the Debtor and the Firm, the fixed fee was payable in full upon commencement of the representation and is nonrefundable unless the legal services promised are not provided or the amount of the fixed fee is determined to be unreasonable in light of the services performed. The

4

engagement letter between the Firm and the prepetition Debtor provides:

> The Company and the Firm have agreed that the Firm, in return for the Company's payment in cash of the sum of Seventy Thousand and No/100 Dollars ($70,000.00) (the "Fixed Fee"), will provide legal representation to the Company throughout the Proceeding. This type of engagement is known as a flat fee or fixed fee contract. The Firm is obligated to provide the services described above, without any other charge for those services to the Company. The Fixed Fee does not include charges for reimbursement to the firm for expenses incurred in this representation, such as actual costs for long distance calls, facsimile charges, duplicating, courier services, postage, filing and/or recording fees, deposition and transcript charges, witness fees and computerized legal research charges. The Company agrees that none of the Fixed Fee is refundable to it. The entire Fixed Fee is earned by the Firm and becomes the property of the Firm upon payment and in return the Firm is obligated to provide the services to you described above. . . . If the Firm is unable for any reason to provide the services agreed to herein, the Firm is obligated to return to the Company the fee paid hereunder less a deduction for the fees and expenses actually incurred from the date of the commencement of this agreement until the date of the termination of Taft's representation hereunder.

The language of the engagement clearly contemplates a flat fee engagement. "'Where the advance payment is in the nature of a flat fee, however, or for a partial payment of a flat fee, it is not only reasonable but also advisable that the agreement expressly reflect the fact that such flat fee is not refundable except for failure to perform the agreed legal services. If the legal services covered by a flat fee are not provided as agreed, an attorney must refund any unearned fees.'" *O'Farrell*, 942 N.E.2d at 804-05 (quoting *Kendall*, 804 N.E.2d at 1160).

The Indiana Supreme Court has noted that flat fee arrangements provide significant benefits to both clients and counsel, and are encouraged because

> they eliminate the uncertainty, anxiety and surprise often found with hourly rates, especially in protracted litigation, which almost always costs more, often much more, than anticipated. They enable corporate clients to better control their budgets. For attorneys, flat fees reward efficiency and enable the attorney to concentrate on the representation instead of fight with the client over monthly bills. They also provide certainty of payment as opposed to the potential of none in the contingent fee context.

*Kendall*, 804 N.E.2d at 1157 (quoting Alec Rothrock, Forgotten Flat Fee: Whose Money Is It and Where Should It Be Deposited?, 1 FLA. COASTAL L.J. 293, 354 (1999)). The benefits and certainty of flat fees in bankruptcy have similarly been recognized, as they allow the debtor "to accurately predict its administrative costs and . . . provides the debtor's counsel with an incentive to expedite the reorganization." *In re Pineloch Ents., Inc.*, 192 B.R. 675, 678 (Bankr. E.D.N.C. 1996).

Simply because Indiana State law and the Bankruptcy Code provide for such engagements, however, does not mean that they must be approved by bankruptcy courts in all instances. Section 327(a) of the Bankruptcy Code provides that attorneys may be employed only with court approval and only after a determination that they are disinterested. Section 328(a) of the Bankruptcy Code further provides that while attorneys may be employed on any reasonable terms, including fixed fees, court approval is required. Because the Court has a duty to monitor professional services and to ensure that the terms of the engagement were not improvident under 11 U.S.C. § 328 and that compensation is reasonable under 11 U.S.C. § 329, the Court holds that fixed fee engagements in bankruptcy are permitted but will be approved only after reviewing the circumstances of each case with a high level of scrutiny. Some factors the court may consider in whether or not to approve a fixed fee bankruptcy engagement include (i) the stated reasons for the engagement; (ii) the understanding of the engagement between the debtor and the attorneys; (iii) the source of the funds used to pay the fee; (iv) the amount of the fee in light of the facts, issues, and complexities (if any) of the case; and (v) the ability of the attorneys to repay all or some of the fee if warranted.

Prior to the commencement of this case, the prepetition debtor met with the Firm to discuss the filing and pursuit of a chapter 11 case. While the Firm preferred to be engaged on an hourly basis, when the prepetition debtor learned of the potential costs of such a representation, it requested

6

that the Firm handle the chapter 11 case for a fixed fee of $70,000. The Firm agreed to do so, and the prepetition debtor paid the Firm $70,000 as a flat fee and $1,046 as a chapter 11 filing fee. The Debtor's strategy in this case is to consummate a sale of its business or confirm a plan of reorganization. To date, other than the instant matter, there have been no difficult issues or complexities in the case, and the Court does not envision any significant change in case posture.

The payments to the Firm were made from the prepetition debtor's operating account. Prior to the payment of the fixed fee, the prepetition debtor had $74,710.47 in its operating account; after the payment of the fixed fee, the balance of the operating account was $3,664.47. At the time this case was commenced, the Debtor had cash on hand or on in deposit accounts in the approximate amount of $2,641. The Debtor has filed all monthly operating reports, and it continues to pay its postpetition obligations as they become due. The most recent cash use budget filed with the Court indicates that the Debtor began April 2012 with approximately $44,500 of cash on hand or in deposit accounts. There is no indication that the payment of the fixed fee to the Firm has impacted the Debtor's ability to operate postpetition or meet its ongoing obligations as debtor in possession.

As stated above, the funds used to pay the fixed fee were paid from the Debtor's operating account. At the hearing on the Application, the Firm advised the Court that the operating account was subject to properly perfected, prepetition liens. No creditor, however, objected either to the Debtor's first day motion for authority to use cash collateral or the Application.

Finally, even with fixed fees, there may be instances where attorneys are required to repay some or all of a fee under 11 U.S.C. §§ 328 or 329 (as discussed in more detail below). Because attorneys are not required to segregate fixed fees, in the event a court orders repayment of some or all of the fee, it must be assured of the attorney's future ability to make such payments to the estate.

Possible protections include a requirement that attorneys place some or all of the fixed fee in an escrow account (not the firm's trust account), or post a bond similar to that required by Local Rule B-6005-1 which provides that unless otherwise ordered by the Court, liquidators and auctioneers must either participate in the bond program administered by the United States trustee or post a bond with the United States as obligee. In this case, given the size of both the Firm and the fixed fee, the Court is satisfied with the Firm's future ability to repay some or all of the fixed fee and has determined that no additional protection is required.

Based upon the circumstances of this case and the inquiry into the previously enumerated factors, the Court concludes that the Firm's employment is in the best interest of the Debtor, its estate, and its creditors and is approved under 11 U.S.C. § 327(a), and that the terms and conditions of the fixed fee engagement are reasonable and are approved under 11 U.S.C. § 328(a).

In the Application, the Firm proposes to file "quarterly applications seeking a determination of reasonableness with respect to reported fees and expenses arising during the prior quarter," and to submit a "final fee application pursuant to 11 U.S.C. § 330, together with a showing that the value of services rendered and expenses incurred by the Firm during the bankruptcy case was reasonable." At the hearing on the Application, the Firm indicated that it believes the fee application process under 11 U.S.C. § 330 is inapplicable to the fees provided for in fixed fee engagements because no payment of fees will be made from the estate. The Court agrees.

As previously discussed, under Indiana law, upon payment a fixed fee becomes property of the attorney and the client no longer has an interest in those funds. *Kendall*, 804 N.E.2d at 1157. As such, the funds are neither property of the Debtor nor property of the bankruptcy estate. *See*, *e.g.*, *Barron v. Countryman*, 432 F.3d 590, 597 (5th Cir. 2005) (a fixed fee "passes entirely to counsel

upon remittance, at which time the debtor relinquishes all interest," and such funds "do not become property of the bankruptcy estate at filing"); *Indian Motorcycle Assocs. III Ltd. P'ship v. Massachusetts Housing Fin. Agency*, 66 F.3d 1246, 1255 (1st Cir. 1995) (fixed fees "never became part of the property of the debtor estate").

Section 330 of the Bankruptcy Code provides that bankruptcy courts may award attorneys and other professionals "reasonable compensation for actual, necessary services," and Section 503(b)(2) of the Bankruptcy Code provides an administrative expense for such awards. Section 507(a)(2) of the Bankruptcy Code in turn grants priority status to such administrative expenses. Because compensation under 11 U.S.C. § 330 gives rise to a claim against the estate and is paid from estate property, the fee application process is only applicable to professionals seeking payment from the estate. *Countryman*, 432 F.3d at 595 ("Importantly, § 330 is not applicable to attorney fees derived from a source other than the debtor's estate."); *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 994 (Bankr. N.D. Ill. 1990) ("Professionals who were fully compensated through non-estate funds would receive duplicate compensation if they obtained an award pursuant to Section 330. Thus, professionals who hold funds that do not belong to the estate need not, and should not, seek an award of those funds through the fee application process."). Under the fixed fee engagement in this case, the Firm will seek no compensation from the Debtor or funds of the estate for payment of fees and the 11 U.S.C. § 330 fee application process is inapplicable.

The engagement between the Firm and the Debtor does provide, however, that the Debtor is responsible for reimbursing the Firm for expenses incurred. Because these payments, if allowed, will be made from the estate, the Firm recognizes that it is required to submit applications under 11 U.S.C. § 330 for allowance of these expenses.

9

The Trustee's Objection that allowing fixed fee engagements in bankruptcy will create a superpriority claim in favor of the attorneys and that the Firm should be required to disgorge the flat fee in the event of administrative insolvency is overruled.  Under the terms of the engagement, fees for the services the Firm will render in this case have been fully paid from non-estate funds and the Firm is not entitled to payment of any fees from the Debtor.  As such, the Firm may not seek compensation for fees under 11 U.S.C. § 330, and cannot have an allowed administrative expense under 11 U.S.C. § 503(b)(2) for services rendered during this case or a claim under 11 U.S.C. § 507(a)(2).

This conclusion does not mean that the Court has no ability to review professional services for reasonableness in a fixed fee case.  *Pineloch Ents*., 192 B.R. at 675 ("If the flat fee is later determined to be "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions," the fee can be adjusted.  11 U.S.C. § 328(a).  If the flat fee exceeds the reasonable value of services, the court can require the attorney to return the fee to the extent that it is excessive pursuant to § 329(b).").  Sections 328 and 329 of the Bankruptcy Code clearly apply even when attorneys are not seeking compensation from the estate, including in this fixed fee engagement.  In fact, the Firm informed the Debtor in the engagement letter that all fees and expenses are subject to approval by this Court.

Section 328(a) of the Bankruptcy Code provides that notwithstanding the terms and conditions of employment, "the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."  Section 329(b) of the Bankruptcy

10

Code, in turn, provides that "[i]f such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive . . . ." Finally, Rule 2017 of the Federal Rules of Bankruptcy Procedure provides that the court may determine whether a prepetition payment made to an attorney in contemplation of bankruptcy "for services rendered or to be rendered is excessive." The requirement that fixed fees be reasonable in light of the services provided is not unique to bankruptcy, and Rule 1.5(a) of the Indiana Rules of Professional Conduct provides that, "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." Accordingly, not only does a bankruptcy court have the ability to determine the reasonableness of fixed fees, under 11 U.S.C. §§ 328 and 329 it has a duty to do so.

In order to conduct that review, and as agreed by the parties, the Firm will file quarterly applications seeking a determination of reasonableness with respect to reported fees and expenses arising during the prior quarter. In addition, at the conclusion of the case, the Firm shall file a final application seeking a determination of reasonableness with respect to reported fees and expenses arising during the chapter 11 case. Pursuant to 11 U.S.C. §§ 328 and 329, the Court will review the fees and expenses incurred in light of the services provided to ensure that the amount of the fixed fee paid to the Firm (i) was not "improvident in light of developments not capable of being anticipated at the time" the payment was made, and (ii) does not exceed the reasonable value of the services provided by the Firm during the chapter 11 case.

While the Court is not prepared to discuss all of the circumstances that might warrant repayment of all or a portion of a fixed fee, during the hearing on the Application the Court asked the Firm and counsel for the Trustee whether a fixed fee could be deemed excessive under 11 U.S.C.

11

§ 329 merely because the estate becomes administratively insolvent. Both the Firm and counsel for the Trustee stated that such a determination could not be based solely on administrative insolvency, and the Court agrees. This does not mean that administrative insolvency cannot be a consideration in the determinations to be made under 11 U.S.C. §§ 328 and 329, but the Court specifically holds that if attorneys provide the services promised pursuant to the engagement agreement, a flat fee cannot be deemed excessive under 11 U.S.C. § 329 on the basis of administrative insolvency alone.

## **Conclusion**

Based on the foregoing, the Court hereby concludes that the Firm and its members represent no adverse interest to the Debtor, other parties in this case or to this estate in the matters upon which the Firm is to be engaged, that the Firm is disinterested as that term is defined under 11 U.S.C. § 101(14), and that under the circumstances of this case the Firm's employment is in the best interest of the Debtor, its estate, and its creditors and is approved under 11 U.S.C. § 327(a), and the terms and conditions of the fixed fee engagement are reasonable and are approved under 11 U.S.C. § 328(a). The Court, therefore, grants the Application and overrules the Objection thereto.

###

Distribution:

Paul T. Deignan
Andrew T. Kight
UST
All Counsel of Record